## W. H. McCORMICK v. THOMAS L. BONFILS.

(Filed Feb. 7, 1900.)

1. CONVEYANCE—*Real Estate—Contract—Statute Governing.* Where the legislature has, by legislative enactment, prescribed rules and regulations governing contracts and agreements relating to real estate, or any interest therein, such legislative enactment must govern, any decisions of other states, or territories, to the contrary, notwithstanding.

2. CONTRACT—*Sale of Real Estate—Necessary Proof.* To constitute a valid contract for the sale of real estate there must be a definite and unconditional offer on the one part, and an absolute acceptance on the other. In an offer to sell by letter, containing a provision that such offer depends upon the happening of some other event, the proof must show that such event has actually happened, before such offer will be final, and before the acceptance of such offer can constitute a binding contract.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before Bayard T. Hainer, District Judge.*

*Thos. H. Doyle* and *S. H. Harris,* for plaintiff in error.

*J. L. Pancoast,* for defendant in error.

### STATEMENT OF THE CASE.

This is an action brought to this court asking a reversal of the judgment of the district court of Noble county, sustaining a general demurrer to the evidence offered by the plaintiff, and rendering judgment in favor of defendant for costs. On the 14th day of February, 1898, the plaintiff filed his petition against defendant, for

the specific performance of a contract for the sale of a
lot in the city of Perry, Noble county, Oklahoma Terri-
tory, described as lot number 16, in block B, original
townsite of Perry.

In said petition it is alleged that defendant entered
into a contract with the plaintiff for the conveyance of
the premises in said petition described, and that in pur-
suance of said contract, the plaintiff had deposited the
amount provided for in said contract in the Farmers and
Merchants bank of Perry, payable to the order of said
defendant, upon the delivery of a deed to said bank, for
plaintiff, and, that on the 7th day of February, 1898, the
plaintiff tendered to the defendant said sum of money
for said deed, and demanded a conveyance, and
that defendant refused to convey and still re
fuses.    Upon the filing of said petition, plain-
tiff deposits said amount of money provided for
in said contract, in court, for the use and ben-
efit of the defendant.    May 2, 1898, defendant files
his motion for rule on plaintiff to make his petition more
definite and certain.    May 17, 1898, plaintiff files his
amended petition.    May 21, 1898, defendant filed his an-
swer.    December 5, 1898, plaintiff filed his mo-
tion for judgment for specific performance upon
the pleadings.    December 12, 1898, defendant
filed his motion to make more definite and
certain amended petition, by including certain addi-
tional letters, not included therein.    Motion confessed.
December 29, 1898, said cause called for trial. Defendant
files his motion to require plaintiff to elect upon which
cause of action he will proceed, for a specific perform-
ance, or for damages for failure to perform.

Thereupon plaintiff elects to proceed for specific performance, and for rents and profits for use of part of said premises. Plaintiff submits his evidence. Defendant demurs to the evidence offered by plaintiff, for the reason that no cause of action is shown thereby.

Thereafter, on December 30, 1898, the court sustains said demurrer, and renders judgment in favor of the defendant for costs. Said sustaining of the demurrer, and the rendering of judgment for defendant for costs is assigned by the plaintiff as error, and the cause is brought here for review.

Opinion of the court by

IRWIN, J.: In this case it is contended by plaintiff that the contract for the sale of the premises in question is made by the letters written by the defendant, Bonfils, to his agent, J. V. Koogle, and the answers thereto. No other evidence is offered in support of the contract. The letters are as follows:

"PERRY, O. T., August 28, 1897.
"MR. THOS. BONFILS,
       "Denver, Colorado.
     "*Dear Sir:*—Will you sell one or both of your lots on south side square. If you will I would like very much to have the handling of them. Will charge the regular commission, that is, five per cent. of the first $1,000 and two and one-half per cent. after that. Will transact your business through either of the banks here that you may designate. Please let me hear from you, Tom, either for or against by return mail. Your friend,
                              "J. V. KOOGLE."
     "No. 1.

"Bureau of Audit and Account of the City of Denver, August 30, 1897. A. F. Eckdahl, City Auditor. A. T. McDonald, Deputy.

"J. V. KOOGLE,

"Perry, O. T.

"*Dear Sir:*—I am just in receipt of your letter, and will say regarding sale of lots, that I am now on a deal with a party for lot 16, where Mrs. Richey is, and if the trade is not made in a few days, will be in a position to talk business with you. What is the very best offer you can make for the lot and building? Property is going up in Perry, and is lower now than it will be next year. I am also on a trade for the two other lots.    Yours,

"T. L. BONFILS, care City Auditor's Office."

"No. 2.

"PERRY, O. T., Oct. 7, 1897.

"T. L. BONFILS, ESQ.,

"Denver, Colorado.

"*Dear Sir:*—Have you closed the deal on your lots on south side square yet? If not can you give me a price on same? Give me the very best you can do, Tom, and if you are reasonable I think I can sell the lots. Please let me hear from you by return mail. Truly yours,

"J. V. KOOGLE."

"No. 3.

"Bureau of Audit and Account of the City of Denver, October 9, 1897. A. F. Eckdahl, City Auditor. A. T. McDonald, Deputy.

"J. V. KOOGLE,

"Perry, O. T.

"*Dear Sir:*—I am in receipt of your letter, and in reply will say the deal has not yet been closed with the party who has been thinking of buying the lots, and I am under no obligations to wait longer on him. I will take net, $2,300 for lots 12 and 13 and $1,100 for lot 16. I

think this is a very reasonable offer. Let me hear from you if you have a prospective purchaser. Yours,

"Thos. L. Bonfils."

"No. 4.

"Perry, O. T., Oct. 15, 1897.

"Thos. Bonfils, Esq.,

"Denver, Colorado.

"*Dear Sir:*—I have an offer of $900 and purchaser to pay one-half of all taxes due on lot 16, blk. B. This is all cash. I have not looked taxes up on this lot but will do so. Will you please write me as to whether you own all buildings on lots 12, 13 and 16. Of course you may not entertain this offer, but I shall send you any offer that is made me. I just closed deal for lot 14, block 24, on east side square yesterday. You will remember that is the lot formerly occupied by Banks & Wade, and the building costs in the neighborhood of $1,000. I sold the lot and building for $1,000. Please let me hear from you by return mail. Yours truly,

"J. V. Koogle."

"No. 5.

"Bureau of Audit and Account of the City of Denver, October 18, 1897. A. F. Eckdahl, City Auditor. A. T. McDonald, Deputy.

"J. V. Koogle,

"Perry, O. T.

"*Dear Sir:*—I am in receipt of your letter, and in reply will say, that I will take one thousand dollars for lot 16, and pay one-half of the taxes provided a proposition I have instructed my attorney to make to a party does not go through. As to the taxes, I am satisfied the county cannot collect them until a deed has been issued by the government, and I have been informed that Rockaway was going to test the matter in the courts. I own all the buildings on lots 12, 13 and 16, except the one

occupied by Clark. I am satisfied property will increase in value 25 per cent. between now and next spring. I am not anxious to dispose of any of the lots just now for this reason. Yours, etc.,

"Thos. L. Bonfils."

"No. 6.

"Perry, O. T., October 21, 1897.

"Mr. Thos. Bonfils, Esq.,

"Denver, Colorado.

"*Dear Sir:*—I wired you this evening that I had sold lot 16, in block B, and that a letter would follow the telegram. In accordance of this I will write the particulars of the sale. You wrote me that you would take $1,000 and would pay one-half of the taxes. The taxes on lot 16, block B, are as follows:

"For the year 1894, paid, $124.77. School, $45. Rebate, $79.77. For the year 1895, $58.44. For the year 1896, $92.89. For the year 1897, $72.67. Your rebate for 1894 will pay your tax for 1897, and leave a balance of $3.05. Taxes for '95, $58.44; and taxes for '96, $92.89, would sum up, $151.33. Less $3.05, would leave $148.28. The half of this, $74.14, the amount you would pay on taxes. Now my man will pay all the taxes and $925 cash. And I have men figuring on your other lots and hope eventually to sell them. I will charge you a very light commission, namely, $25, and as I owe you an old account of $5, you will owe but $20 on commission. I saw Mr. Pancoast, and he tells me that before receiving your letter instructing him to lease to Mrs. Richey, he had leased from month to month from another party.

"As I have on my books three lots on the square, either of which I am authorized to sell for $800, of which I am to receive in cash, $40 commission, I certainly think, Mr. Bonfils, that your property is well sold. Rockaway has started no suit testing the legality of taxes and I very much doubt if he will, as Judge Bierer,

one of the ablest men on the bench in Oklahoma, strictly insists that all townsite property here was liable for taxes from the time patent was applied for by townsite board. I enclose deed which please sign before proper officer and send to Farmers and Merchants bank with instruction to collect $925 before turning same over. Please let me hear from you as soon as possible.  P. S. If you prefer you can send to your attorney.  Very truly yours,

"J. V. Koogle."

"No. 7.

"Bureau of Audit and Account of the City of Denver, October 23, 1897. A. F. Eckdahl, City Auditor. A. T. McDonald, Deputy.

"J. V. Koogle,

"Perry, O. T.

"*Dear Sir:*—I am just in receipt of your letter containing blank deed for lot 16 which you wish me to sign. I wrote you some time ago that I would take $1,000 for the lot and pay one-half of the taxes—provided a certain proposition did not go through. That proposition did not relate to Mrs. Richey, as you seem to infer, nor did I intend in my letter to convey the impression that the buildings were included in the transaction. You will notice that I mentioned the lot only, and not the buildings in my last letter. As to the taxes, I would insist that the amount be placed in escrow, pending the decision of the supreme court as to the legality of the ½5 per cent. levy, and the right to assess property until a deed is issued by the government. Should Mr. McCormick desire to consider this proposition you can notify me, but I will not bind myself to any agreement to sell until I have thoroughly considered it. I would ask the privilege to move buildings on rear of lot until I come down, which will be in a few weeks.

Yours, etc.,

"No. 8.                                    "Thos. L. Bonfils."

"J. V. Koogle & Co.,

"Perry, Oklahoma, Oct. 25, 18.)7.

"Thos. Bonfils, Esq.,

"Denver, Colorado.

*"Dear Sir:*—I have this morning received your letter and carefully noted its contents. I also submitted it to Mr. McCormick and his attorneys. Mr. McCormick is perfectly willing to place the amount that he is to pay in escrow, but as you made no reserve, whatever, of any improvements on the lot in your proposition to sell the property, Mr. McCormick, of course, thinks that he has bought fairly and squarely, according to your own proposition, the improvements on the said lot. That was my only reason for writing you and asking you just what improvements you owned, and you will remember that your reply states to me that you own all the improvements on lots 12, 13 and 16, except the building occupied by Clark, and now, Tom, as Mr. McCormick is perfectly willing and indeed has complied with all his part of the contract, by making his deposit of the entire amount he is to pay, it does seem to me that the price of the shacks on lot 16, is too trifling to be an impediment in the way of the deal on the lot.

"I want to say further, Tom, that for the past week we have had nothing but wind and dust, and as we have had no rain for over four weeks, if this weather continues a week longer there will be an entire failure of the wheat crop, and if this occurs, one year from now, you would not be able to get $500 for the lot.

"Please make your mind and let me hear from you by return mail. Yours truly,

"J. V. Koogle."

"No. 9.

"Bureau of Audit and Account of the City of Denver, October 28, 1897. A. F. Eckdahl, City Auditor. A. T. McDonald, Deputy.

"J. V. Koogle,

"Perry, O. T.

"*Dear Sir:*—I am just in receipt of your last letter and note what you say. I cannot understand 'why McCormick 'thinks he has bought fairly and squarely according to your own proposition.' I wrote you that I would take $1,000 for the lots and pay one-half of the taxes under certain conditions. I made no positive agreement to sell, as you well know. Your own letter shows that Mr. McCormick did not intend to buy the buildings, for you wanted to know if I owned them, and in answer I stated that I did. Read my letter carefully, and you will see that the offer was made on the lot only, and that conditionally. I will not include the buildings at the price given for the lots, as I am satisfied that I can get more by waiting a short time. You can notify by mail as to Mr. McCormick's reply to this letter, but in the meantime, should I receive a better offer, I will feel justified in accepting it.

"Yours, etc.,

"Thos. L. Bonfils."

"No. 10.

"Perry, Oklahoma, October 30, 1897.
"Thomas L. Bonfils,

"Denver, Colorado.

"*Dear Sir:*—I am in receipt of your letter of the 28th inst. and have submitted the same to Mr. McCormick. He instructs me to write you to this effect: That while he, (McCormick,) understood at the time, lot 16, in block B, and still understands that he bought all the buildings, yet, to avoid any misunderstanding or litigation, he will now concede the buildings to you, and, if necessary, will allow you to move the buildings, on the rear end of said lot for a reasonable time. Mr. McCormick, on the 21st of October, the date of my wire to you, deposited $925, in the  Farmers and Merchants bank,

subject to your orders, on the receipt of a warranty deed from you to lot 16, in block B, he agreeing at the time to assume all unpaid taxes on said lot, and he therefore insists that according to your letter of instructions to me he bought the lot of that date. He has now added to this deposit for this deal, $150, the amount of the unpaid taxes, making a deposit of $1,075, $1,000 as your price, and $75 as one-half of the unpaid taxes. The $75 to remain in escrow until the courts have finally decided as to the legality of certain taxes. I also en close another deed conforming to the provisions of this letter, and truly hope that no further impediments will offer themselves to retard 'the consummation of this deal. Hoping to hear from you soon, I am,

"Yours truly,

"No. 11.                                    "J. V. KOOGLE."

"Bureau of Audit and Account of the City of Denver, Nov. 1, 1897.   A. F. Eckdahl, City Auditor.   A. T. McDonald, Deputy.

"J. V. KOOGLE,

"Perry, O. T.

"*Dear Sir:*—I am in receipt of your recent letter. Please find out from McCormick if he would be willing to permit the buildings to remain where they are if I consent to give him all the rents from them until I come down. I intend to move them on lot 13 as soon as I can make arrangements if the sale goes through, consequently do not want to be put to the trouble and expense of moving them twice.   Yours truly,

"THOS: L. BONFILS."

"No. 12.

"PERRY, O. T., Nov. 4, 1897.

"MR. THOS. BONFILS, ESQ.,

"Denver, Colorado.

"*Dear Sir:*—Your letter of 1st inst. received this morn ing; in answer to your request that I see McCormick

'and find out if he would be willing to permit the build·
ings to remain where they are if I consent to give him
all the rents from them until I come down,' I saw Mr.
McCormick and showed him your letter, and he author-
ized me to write you that he is willing to do this.

"Yours truly,

"J. V. KOOGLE."

"No. 13.

"J. V. Koogle and Company, Perry Oklahoma, Nov. 14,
1897.

"THOS. BONFILS, ESQ.,

"Denver, Colorado.

"*Dear Sir:*—On Thursday, November 4, I wrote in an-
swer to a letter of yours asking if McCormick would
allow the buildings to remain on lot 16, block B, as they ·
are until you came down. I answered you in the affirma-
tive, after consulting McCormick. Since then, I have been
looking either for you in person or for a letter from
you, but up to this time I have not seen you or heard
one word from you. Since October 21, almost a month
ago, McCormick's money has  been on deposit in the
Farmers and Merchants bank, subject to your order, on
presentation of a deed to lot 16, block B, according to
your own terms. You may have written and your letter
miscarried. Please write and let me know the reason
of this unusual delay. Truly yours,

"J. V. KOOGLE."

"No. 14.

"Bureau of Audit and Account of the City of Denver,
Nov. 18, 1897. A. F. Eckdahl, City Auditor. A. T.
McDonald, Deputy.

"J. V. KOOGLE,

"Perry, O. T.

"*Dear Sir:*—In reply to your letter will say that I
expect to be in Perry shortly and will see you and Mr.

McCormick regarding the matter. I had expected to be in Perry before this time. Yours,

"THOS. L. BONFILS."

"No. 15.

While there are several assignments of error in this case, we think they are all merged into one assignment of error, to-wit: That the court erred in sustaining defendant's demurrer to plaintiff's evidence. The question is, does the evidence, as submitted by the plaintiff, sufficiently prove a legal and valid contract, for the sale of real estate, according to the laws of the Territory of Oklahoma, upon which a proceeding for a specific performance can be based? Numerous authorities are cited to sustain the proposition that a valid contract for the sale of land may be embraced wholly in letters written concerning such land; and that it is not essential that the letters should be addressed by one of the contracting parties to the other. The objection here is not alone that the contract is made by letters, but that the letters themselves fail to show a contract, such as is legally enforceable by law.

Parsons, in his work on Contracts, defines a contract as: "An agreement between two or more parties for the doing or the not doing of some particular thing." (Parsons on Contracts, 7th edition, vol. 1, page 6.)

Chief Justice Marshall, in the case of *Sturgis v. Croninfield*, 4th Wheaton, 197, says: "A contract is an agreement in which a party undertakes to do or not to do a particular thing."

In the 2nd Blackstone Commentaries, 446, a contract is defined as follows: "An agreement upon sufficient consideration to do or not to do a particular thing."

It has been said that the word agreement is derived
from the phrase, *"aggregatio mentium."* This was prob-
ably sugested by the wish to illustrate that principle
of the law of contracts which makes an agreement of
the minds of the parties, or the consent and harmony of
their intentions, essential; that is, they must propose
and mean the same thing, and in the same sense. The
gist and meaning of the word contract is, that  the
minds of the parties must meet and agree upon a given
proposition; one must make a definite and absolute offer,
and the other an  unconditional  acceptance, before a
legal contract can be made, enforceable by a suit for
specific performance.      -

Now, measured by this rule, do the letters in question
make such a contract? The first letter in which there
is any definite offer to sell the premises described in the
petition, in this case, is the one dated October 18, 1897.
In that letter the defendant writes his agent: "I will
take one thousand dollars for lot 16, and pay one-half
of the taxes; *provided, a proposition I have instructed my
attorney to make to a party does not go through."*

And the last words in that letter are:   I am not
anxious to dispose of any of the lots just now for this
reason." The said reasons being stated in other parts
of this letter.

Immediately following this is the letter of October 21,
1897, in which the agent states that he had wired him
that he had sold the property; this letter of October 18,
certainly does not contain an unconditional offer or such
an offer as would authorize the agent to make the sale of
the lot without further instructions from him, as he

distinctly says, in that letter, that the offer there made is dependent upon a condition, to-wit: That another business transaction must first be disposed of, before that offer is final. Now, must it be said, that under the terms of this letter, the agent had the right, immediately, and without further consultation with his principal, to proceed to sell said lot on the terms of that letter. We think not. And we have examined all the letters very carefully, and we find nowhere in said letters, any definite offer to sell, which had been accepted by the defendant prior to the commencement of this suit; and we think such letters entirely fail to show any such contract.

Another defense to this alleged contract is, that it is in violation of section 4, chapter 8, of the laws of Oklahoma, of 1897, known as the Conveyance act. It was held by the district court in this case that section 4 requires that an agreement such as the one relied upon in this case should be reduced to writing and subscribed by the grantor and the grantee. Counsel for plaintiff insists that this construction of this statute is erroneous. Without expressing any opinion as to the proper construction to be placed upon this act of the legislature, so far as a deed or mortgage is concerned, we think the language used by the legislature in this act is such that the construction of the district court placed thereon is correct. The act expressly provides that all contracts of this kind to be valid must be reduced to writing and subscribed by the parties thereto. We can only gather the legislative intent from the language used. The parties to such a contract of course would be the plaintiff and defendant in this case, and we do not think

that any error was committed by the court in constru-
ing this language to mean that to make this contract
valid and binding, under the terms of this section of the
statute, it should be subscribed by the plaintiff and de-
fendant. However, we do not regard this point as nec-
essary or material in deciding this case.. Therefore,
we would refrain at this time from entering into any
extended comments on said act, or the proper construc-
tion thereof, as we are satisfied that a view of all the
evidence in the case, and all the letters introduced in
evidence, fails, entirely, to show any legal or valid con-
tract between the parties which would be enforceable by
an action for specific performance.

Hence, we think the ruling of the district court, in
sustaining the demurrer to the petition, was correct.
Therefore, the decision of the district court will be af-
firmed.

Hainer, J., having presided in the court below, not
sitting; all of the other Justices concurring.