**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JACQUELYNN (JACKIE) L. JACKS;
STUART L. REES, Wife and Husband;
HARLEY J. JACKS; JACQUELYNN
(JACKIE) L. JACKS, as Next Friend for
T.J.M., a minor, and A.J.J., a minor,

      Plaintiffs - Appellees,

v.

CMH HOMES, INC., d/b/a Oakwood
Homes Oklahoma City, and d/b/a Clayton
Manufactured Homes; CMH
MANUFACTURING, INC., a/k/a Karsten
Homes,

      Defendants - Appellants,

and

VANDERBILT MORTGAGE AND
FINANCE, INC.,

      Defendant.

No. 15-6197

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:15-CV-00044-M)**
_____

W. Scott Simpson of Simpson, McMahan, Glick & Burford, PLLC, Birmingham,
Alabama (Jonathan E. Beling of Simpson, McMahan, Glick & Burford, PLLC,
Birmingham, Alabama, and Joseph R. Farris, Sarah Buchan, and Brynna Schellbar of

Franden, Farris, Quillin, Goodnight + Roberts, Tulsa, Oklahoma, with him on the briefs) for Defendants–Appellants.

Michael M. Reynolds of DeBois, Sherrill & Reynolds, Duncan, Oklahoma, for Plaintiffs–Appellees.

_____

Before **MATHESON**, **McKAY**, and **MORITZ**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

In 2009, Jacquelyn Jacks bought a manufactured home from CMH Homes, Inc., on installment. The purchase was financed through CMH Homes under a manufactured-home retail installment contract. The contract contains an arbitration agreement, which provides that all disputes arising from, or relating to, the contract would be resolved by binding arbitration. By its terms, "[t]his Arbitration Agreement also covers all co-signors and guarantors who sign this Contract and any occupants of the manufactured Home (as intended beneficiaries of this Arbitration Agreement)." (Appellants' App. at 31.) Ms. Jacks was the only "buyer" to sign the contract; there were no cosigners or guarantors. Ms. Jacks, along with her husband and their children, moved into the manufactured home soon after it was delivered and installed by CMH Homes.

About five years later, Ms. Jacks and her family brought suit in state court against CMH Homes and CMH Manufacturing, which had manufactured the home, and Vanderbilt Mortgage and Finance, which is not a party to this appeal. They claimed: (1) CMH negligently installed and repaired the manufactured home's water system, which caused toxic mold to grow; (2) the manufactured home was unreasonably dangerous at

the time it left the control of CMH; (3) the manufactured home was not fit for habitation. Ms. Jacks also sought to rescind her purchase of the manufactured home, along with her agreement to pay Vanderbilt Mortgage and Finance the indebtedness incurred to purchase the home.

The CMH defendants removed the case from state to federal court and moved to compel arbitration and stay the court proceedings. Defendants argued that Ms. Jacks, having signed the contract, was barred by the arbitration agreement from pursuing her claims in court. The district court agreed and granted the motion to compel as to the claims of Ms. Jacks.

The district court denied the motion as to the remaining plaintiffs who were not parties to the installment contract. Defendants had argued that Ms. Jacks' husband and their children were likewise bound by the arbitration agreement, even though they never signed the contract. Because "all Plaintiffs were occupants of the Home and intended third party beneficiaries to the Arbitration Agreement," Defendants maintained below, "a valid agreement to arbitrate exists between all Plaintiffs and CMH Homes under Oklahoma contract law." (*Id.* at 18.)

The district court did not agree. It held that "the single sentence in the Arbitration Agreement generically referencing 'any occupants of the Manufactured Home (as intended beneficiaries of this Arbitration Agreement)' is not sufficient to make the non-signatory plaintiffs, who are occupants of the home, third party beneficiaries of the Arbitration Agreement and subject to being compelled to arbitration." (*Id*. at 83.)

The district court also rejected Defendants' contention that the nonsignatory plaintiffs were "bound to arbitrate their claims" under "the doctrine of equitable estoppel" (*id.* at 24), holding that "Defendants have not satisfied any of the elements of equitable estoppel," (*id.* at 84):

> There have been no false representations or concealment of facts by the non-signatory plaintiffs. Further, the Court finds no equitable reason why the non-signatory plaintiffs should be bound by the Arbitration Agreement; the non-signatory plaintiffs have engaged in no conduct which would equitably warrant that they be bound by the Arbitration Agreement.

(*Id.* at 84.)

Defendants timely appealed the district court's partial denial of their motion to stay and to compel arbitration. We have jurisdiction under the Federal Arbitration Act, which authorizes an interlocutory appeal of an order "refusing a stay of any action under section 3 of this title" or "denying a petition under section 4 of this title to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(A), (B).

On appeal, Defendants tell us "[i]t is well-established that the standard of appellate review of a district court order denying a motion to compel is de novo." (Appellants' Opening Br. at 10.) That is generally true. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). But it is also incomplete: "We have not yet decided whether the de novo standard that generally applies to our review of a denial of a motion to compel arbitration also applies to a denial of such a motion based on equitable estoppel, or whether some other standard of review applies." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 612–13 (10th Cir. 2014) (unpublished) (citing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. App'x 704, 707 (10th Cir. 2011)

- 4 -

(unpublished)). As we have recognized, "[o]ther circuits are split on this issue, with some courts reviewing such decisions de novo, and others for an abuse of discretion." *Id.* In any event, we need not decide which to apply here because Defendants' estoppel argument fails under either standard.

Defendants also note that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (Appellants' Opening Br. at 10 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983))). Again, that is generally true, but the presumption in favor of arbitration does not apply here: "[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998); *see also Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) (recognizing that "this presumption disappears when the parties dispute the existence of a valid arbitration agreement"). Defendants, as the parties seeking to compel arbitration, have the burden to show that the arbitration agreement applies to the nonsignatory plaintiffs. *Hancock*, 701 F.3d at 1261.

"[A]rbitration is a matter of contract." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). "[T]o determine whether a party has agreed to arbitrate a dispute," we "apply ordinary state-law principles that govern the formation of contracts." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013). As every first-year law student knows, "[a]n agreement or mutual assent is of course essential to a valid contract." *Lucy v. Zehmer,* 84 S.E.2d 516, 522 (Va. 1954). This basic rule of

contracts was axiomatic in Oklahoma even before its admission to the Union: "The gist and meaning of the word 'contract' is that the minds of the parties must meet and agree upon a given proposition." *McCormick v. Bonfils*, 60 P. 296, 299–300 (Okla. 1900). In present-day Oklahoma, a contract is defined by statute as "an agreement to do or not to do a certain thing." Okla. Stat. Ann. tit. 15, § 1. In short, without an agreement, there is no contract.

Arbitration agreements are no different: "An agreement for the submission of an issue to arbitrators is a prerequisite to the commencement of a valid arbitration agreement." *Voss v. City of Okla. City*, 618 P.2d 925, 928 (Okla. 1980). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648 (internal quotation marks omitted); *see also Boler v. Sec. Health Care, L.L.C.*, 336 P.3d 468, 477 (Okla. 2014) ("Consent to arbitrate is an essential component of an enforceable arbitration agreement.").

Defendants would have us turn this basic principle of contract law on its head. They concede that the nonsignatory plaintiffs are not third-party beneficiaries to the contract as a whole. (Appellants' Reply Br. at 10 n.9.) Defendants focus instead on the arbitration agreement itself, which designates "any occupants of the Manufactured Home" as "intended beneficiaries of this Arbitration Agreement." (Appellants' App. at 31.) The "benefit," according to Defendants, is the right to compel arbitration. But Defendants have not cited authority, and we are not aware of any, that says a contract (here, the arbitration agreement) can be enforced against an intended third-party beneficiary who has not accepted the benefit (here, the right to compel arbitration) or

- 6 -

otherwise sought to enforce the terms of the contract. *Cf.* Restatement (Second) of Contracts § 306 cmt. b (1981) ("[A] beneficiary is entitled to reject a promised benefit."). Such a rule would make no sense: unwitting third parties could be bound to a contract without knowing its terms or ever realizing some benefit.

At bottom, Defendants' argument reduces to the following syllogism:

Major premise: A third-party beneficiary to an arbitration agreement is bound by the agreement.

Minor premise: Here, the nonsignatory plaintiffs are third-party beneficiaries of the arbitration agreement.

Conclusion: Therefore, the nonsignatory plaintiffs are bound by the arbitration agreement.

Defendants spend most of their briefing on the minor premise but then fail to cite to *a single case* to support the major premise. As the parties seeking to compel arbitration, Defendants have the burden to establish that the nonsignatory plaintiffs can be held to the arbitration agreement. *See Hancock*, 701 F.3d at 1261. Here, it is simply not enough to show that the nonsignatory plaintiffs are third-party beneficiaries.

Next, Defendants argue that the nonsignatory plaintiffs are bound to the arbitration agreement, which they never agreed to, "under the doctrine of equitable estoppel." (Appellants' Opening Br. at 23.) At different stages of these proceedings, Defendants seemingly advance two different theories of equitable estoppel. Below, Defendants advanced a theory of integrally-related-claim estoppel, sometimes referred to as the "intertwined claims" theory. (*See* Appellants' App. at 84 (arguing that "[b]ecause the non-signatories' claims are identical to Jackie Jacks' claims and are 'integrally related' to

- 7 -

the [contract] setting forth the Arbitration Agreement, all Plaintiffs are subject to the Arbitration Agreement.")).  In some jurisdictions, this theory permits a nonsignatory to estop a signatory from eschewing arbitration when the claims are integrally related to a contract that contains an arbitration agreement.  *See Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017).  Insofar as Defendants continue to press this theory of estoppel on appeal, it "does not govern the present case, where a signatory-defendant seeks to compel arbitration with a nonsignatory-plaintiff."  *Id.*; *see also Carter v. Schuster*, 227 P.3d 149, 156 (Okla. 2009) (distinguishing between "estop[ping] a *signatory* from avoiding arbitration with a nonsignatory where the nonsignatory was seeking to resolve issues in arbitration that were intertwined with the agreement the estopped party had signed," and estopping a *nonsignatory* (emphasis in original)).

On appeal, Defendants also argue for the "direct-benefit estoppel doctrine," which "applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause."  (Appellants' Opening Br. at 28-29 (quoting *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006))).  "Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes."  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).  Some states have embraced the doctrine of direct-benefits estoppel.  *See, e.g.*, *id*.  Oklahoma has not.

In any event, this direct-benefit-estoppel argument is waived.  "We have held that an appellant waives an argument if she fails to raise it in the district court and has failed

to argue for plain error and its application on appeal." *Campbell v. City of Spencer*, 777 F.3d 1073, 1080 (10th Cir. 2014). Defendants did not raise direct-benefit estoppel below and have not argued for plain error on appeal. Though Defendants *did* argue integrally-related-claim estoppel before the district court, direct-benefit estoppel is not the same thing. *See supra*; *see also Janvey*, 847 F.3d at 242 (recognizing "two theories of equitable estoppel": (1) "[t]he 'intertwined claims' theory"; (2) "[t]he 'direct benefits' theory."). And our forfeiture-and-waiver rule applies even "when a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial." *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013).

We find no compelling reasons to reach this argument. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court."). To the contrary, there is good reason not to depart from our rule: Defendants fail to cite Oklahoma law supporting their direct-benefits-estoppel theory. "As a federal court, we are generally reticent to expand state law without clear guidance from its highest court." *Schrock,* 727 F.3d at 1284.

We **AFFIRM**.