**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ACCELERATED, LLC,

    Plaintiff - Appellant,

v.

LMI II, LLC,

    Defendant - Appellee.

Nos. 23-6062 & 23-6086
(D.C. No. 5:22-CV-00258-HE)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT*
_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.
_____

Accelerated, LLC agreed to buy an aircraft from LMI II, LLC.  But a pre-sale

inspection indicated the aircraft's engines were damaged beyond the manufacturer's

standards for operation.  Although the parties agreed that LMI would initiate an

insurance claim for engine damage, and LMI did so, Accelerated hesitated to close

the sale.  On the day of closing, LMI agreed to initiate another claim under a policy

provision allowing reimbursement for temporary engines while the permanent

---

    * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

engines were being repaired.  After the sale, however, the manufacturer issued Technical Variances (TVs) allowing the aircraft to be operated without repairing the engines.  Accelerated did not have the engines repaired and did not incur costs for temporary engines.  As a result, LMI declined to tender to Accelerated the proceeds from the temporary-engines insurance claim.

Accelerated sued, and both sides moved for summary judgment.  The district court granted summary judgment to LMI and then awarded LMI its attorney's fees.  Accelerated now appeals from both the decision on the competing motions for summary judgment (No. 23-6062) and the award of fees (No. 23-6086).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in both appeals.

## BACKGROUND

On October 14, 2021, Accelerated and LMI entered into an Aircraft Purchase and Sale Agreement (the Agreement).  The Agreement provided Accelerated the right to conduct a complete pre-purchase inspection of the aircraft.  Accelerated arranged for West Star Aviation to conduct an inspection.

On October 25, Accelerated's broker e-mailed LMI's counsel.  He noted the inspection, still in its early stages, had identified several areas of concern.  On October 29, the parties executed an addendum to the Agreement (the First Addendum), in which Accelerated waived a complete pre-purchase inspection in exchange for a reduction in the purchase price.  The First Addendum stated West Star would inspect the engines for foreign object damage (FOD), and LMI would be "responsible to initiate an insurance claim . . . for any airworthiness discrepancies

2

related to foreign object damage . . . discovered as part of such limited inspection."
Aplt. App. Vol. II at 76.  LMI was insured under a business aircraft policy (the
Policy) issued by AIG Aerospace Insurance Services, Inc. (AIG).

On November 2, Accelerated's counsel e-mailed LMI's counsel that
Accelerated "need[ed] to put this . . . deal on hold until we can determine the extent
of the foreign object damage to both engines [and] what the repairs would look like.
Then we will need to confirm insurance coverage before we can proceed to closing."
*Id.* at 131.  Later that day, Accelerated's counsel e-mailed that it would only be
willing to move forward with closing if it could "get:  (i) a report on the extent of the
damage, (ii) [engine manufacturer] Rolls Royce to weigh in on the necessary repairs
and (iii) AIG to confirm that the necessary repairs are covered."  *Id.* at 130.

On November 3, West Star indicated that some of the engine damage exceeded
specifications established by Rolls-Royce.  LMI e-mailed Accelerated that it had
initiated an insurance claim and proposed November 12 as a firm closing date.
Accelerated was loath to proceed with the sale, replying to LMI on November 4 that
it was "time to pull the plug on this deal."  *Id.* Vol. I at 166.  On November 5, LMI
sent a letter to Accelerated, reiterating it had initiated an insurance claim for FOD to
the engines as agreed and stating Accelerated would be in default if it did not close
the deal within five days.

In the meantime, West Star had been in communication with Rolls-Royce.  On
November 4, Rolls-Royce confirmed to West Star that some of the damage was
considered not acceptable, although it might be possible to issue TVs.  On the same

day LMI sent its default letter to Accelerated, November 5, Rolls-Royce e-mailed West Star that "we are chasing our specialists continuously to accept the findings which exceed the . . . limits via TV.  This is not completely confirmed yet but this is what we want to achieve."  *Id.* at 199.  That same day, West Star confirmed to Rolls-Royce that it had submitted TV requests for the engines.

On November 8, AIG confirmed the Policy covered LMI's engine claim, and Accelerated e-mailed LMI that it was ready to move forward with the closing.  The next day, however, the parties continued to negotiate.  Beyond the engine claim that LMI already had initiated, AIG proposed a settlement under Coverage R of the Policy, entitled "Temporary Replacement Parts Rental Expense."

Coverage R provided up to $500,000 in coverage for "the cost of renting or leasing, installing, removing and transporting temporary replacement component part(s) that are necessary due to Physical Damage loss to which this policy applies." *Id.* Vol. II at 105.  Coverage R provided it "applie[d] only if you have made reasonable attempts to rent or lease component parts to replace the parts that are damaged" and "[t]he time required to repair the [aircraft] exceeds the Minimum Required Repair Period shown under this Coverage in the Declarations," which was five days.  *Id.*  During the negotiations, Accelerated's broker e-mailed cost projections to AIG indicating that the costs of rental engines would greatly exceed the $500,000 policy limit, and the time for repairs would last an estimated 70 days. The broker e-mailed both parties' counsel on November 9 that he had spoken to AIG's adjuster and "confirmed . . .  that they don't care and they will make the

4

statement to us tomorrow how the monies get spent or what is done with it, it does not have to go to rentals specifically, we can do with it as we please with no concern of insurance fraud." *Id.* at 281.

While the parties were negotiating, Rolls-Royce e-mailed West Star on November 9 that "[t]he stress specialist reviewed and accepted the reported findings on the . . . engines in the 'as-is' condition. The [TVs] are in work now. We are aiming to provide the TV's [sic] on the requested date 12 NOV 2021." *Id.* at 139.

Closing was set for November 10. That day, the parties executed another addendum to the Policy (the Second Addendum). The Second Addendum provided:

> WHEREAS, Seller and Purchaser have agreed to have all funds received by Seller from Seller's aircraft insurance company – AIG Aerospace (the "***Insurance Company***") relating to the insurance settlement for the temporary engines, more specifically described as "Coverage R: Temporary Replacement Parts Rental Expense" to be paid directly to Seller (the "***Insurance Payout***");

> WHEREAS, in lieu of the Purchase Price being reduced at Closing for the Insurance Payout, the Seller has agreed to transfer (the "***Insurance Payout Transfer***") the Insurance Payout to Purchaser within 3 business days of receipt by Seller; and

> WHEREAS, in consideration for the benefit to Seller and all of its related entities of closing the sale of the Aircraft, Seller agrees to have its related company  Select Management Resources, LLC ("***Select Management***") guarantee the 1nsurance Payout Transfer.

> NOW THEREFORE in consideration of the mutual covenants and agreements contained in this Second Addendum, the sufficiency of which both Parties acknowledge, the Parties agree to amend the Agreement as follows:

> 1.      The Seller agrees to do everything within its power to keep its insurance policy on the Aircraft active before, during and after the Closing and to cooperate with the Purchaser and the Insurance Company to cause

5

the payment of the Insurance Payout and all other claims relating to the Aircraft (wherever payable) to be made in a timely manner.

    2.    The Seller agrees to make the Insurance Payout Transfer to Purchaser within 3 business days of receipt by the Seller of the Insurance Payout.

    3.    Select Management agrees to guarantee the Insurance Payout Transfer so that if the Seller receives the Insurance Payout and fails to transfer the Insurance Payout to Purchaser within 3 business days, then Select Management shall be responsible to pay to Purchaser the amount of the Insurance Payout.

    4.    The Seller shall allow Buyer post-closing access to all information and reports from Rolls Royce and West Star regarding the engine damage and any engine repairs made.[1]

*Id.* at 78.

The sale closed as scheduled on November 10. On November 13, Rolls-Royce issued TVs for both engines. Rolls-Royce "concluded that the reported damage . . . can be accepted 'as-is' for further operation without any limitations. The recommendation given in this TV will not adversely affect the integrity and/or functionality of the component, system or the engine." *Id.* at 167; *see also id.* at 168.

AIG delivered a check for the Coverage R payout to LMI's offices on or about November 17. On November 22, LMI informed Accelerated it had received the check. But LMI did not tender the insurance proceeds to Accelerated. According to LMI, Accelerated refused to provide it with reports regarding the engine damage and repairs. Allegedly this "caused LMI to become suspicious about the accuracy of the

---

[1] LMI asserts this paragraph contains a scrivener's error, and that the parties intended that the *Buyer* would allow the *Seller* post-closing access to information about repairs. Accelerated states that there is no scrivener's error. This dispute, however, is not material to the resolution of the appeals.

information previously provided, *i.e.*, the need for engine repairs and temporary engines." *Id.* Vol. I at 133. LMI therefore "decided to retain the insurance proceeds until it could determine whether the factual basis for the Coverage R payment was legitimate." *Id.* Subsequently, LMI learned "[t]he damage to the permanent engines did not require removal or repairs. As a result, there was never a need for temporary engines and thus never a need for the insurance claim to AIG under Coverage R of the Policy." *Id.* LMI did not tender the Coverage R payment to Accelerated. Nor did its affiliate Select Management compensate Accelerated.

Invoking diversity jurisdiction, Accelerated filed suit in the federal district court. It alleged LMI breached the Second Addendum by not tendering the $500,000 payment and not having Select Management guarantee the payout, and it asserted alternative claims for promissory estoppel, money had and received, and unjust enrichment. Both parties moved for summary judgment: Accelerated argued LMI owed it the Coverage R proceeds, and LMI argued the Second Addendum was unenforceable due to mistake. LMI informed the district court that it intended to refund the payment to AIG if the district court ruled in its favor.

The district court denied Accelerated's motion and granted LMI's motion. It held the Second Addendum was invalid because "there was not mutual agreement due to the existence of mutual mistake of fact." *Id.* Vol. III at 107. "The undisputed facts make it clear that all parties (plus AIG) <u>assumed</u> that temporary replacement of the engines incident to their repair would be necessary." *Id.* The court continued:

> Their agreement for LMI to pay over the insurance proceeds to Accelerated was based on the assumption that temporary replacement of the engines would be required and that assumption was the basis for the insurance claim.  There is nothing in the agreements to suggest that Accelerated should receive the payment regardless of whether a basis for insurance coverage was ultimately determined to exist.

*Id.* at 107-08.  After also rejecting Accelerated's alternative equitable claims, the district court entered judgment in favor of LMI.

LMI then moved for an award of attorney fees under an Oklahoma fee-shifting statue and a prevailing-party fee provision in the Agreement.  Accelerated opposed LMI's entitlement to fees under either the statute or the Agreement, but it did not dispute the reasonableness of the requested amount.  The district court held that LMI was entitled to reasonable fees under both the statute and the Agreement and that its requested amount was reasonable.  It therefore entered an order awarding LMI fees in the amount of $90,761.

Accelerated timely appealed from both the final judgment and the order awarding fees.  This court consolidated the two appeals for all procedural purposes.

## DISCUSSION

### No. 23-6062

Appeal No. 23-6062 concerns the denial of summary judgment to Accelerated and grant of summary judgment to LMI.

**I.    Standards of Review**

"We review the grant or denial of summary judgment de novo, applying the same standard of review as the district court."  *Rumsey Land Co. v. Res. Land*

8

*Holdings, LLC* (*In re Rumsey Land Co.*), 944 F.3d 1259, 1270 (10th Cir. 2019) (internal quotation marks omitted).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  *In re Rumsey Land Co.*, 944 F.3d at 1271 (internal quotation marks omitted).  "Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."  *Frank v. Lee*, 84 F.4th 1119, 1136 (10th Cir. 2023), *petition for cert. filed* (U.S. Feb. 19, 2024) (No. 23-901) (internal quotation marks omitted).

## II.    Contract Claim

The Agreement chose Oklahoma as the governing law and venue for any disputes.  Because this is a diversity case, we "apply federal procedural law and state substantive law."  *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1096 (10th Cir. 2023).  "[O]ur task is not to reach our own judgment regarding the substance of the common law, but simply to ascertain and apply the state law."  *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) (brackets and internal quotation marks omitted).

In Oklahoma, the first element of breach of contract is "formation of a contract."  *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021).  The district court agreed with LMI that the Second Addendum did

9

not form a valid contract because of mutual mistake.  We consider this issue first because it is dispositive of both motions for summary judgment.

Under Oklahoma law, "[i]n order to have a valid contract there must be mutual consent, or a meeting of the minds." *Beck v. Reynolds*, 903 P.2d 317, 319 (Okla. 1995); *see also* Okla. Stat. tit. 15, § 51 ("The consent of the parties to a contract must be . . . [m]utual . . . ."). "When there is a mutual mistake of fact as to a material element of the contract, a meeting of the minds is absent." *Hampton v. Sur. Dev. Corp.*, 817 P.2d 1273, 1274 (Okla. 1991). "Consent is not mutual unless the parties all agree upon the same thing in the same sense." Okla. Stat. tit. 15, § 66; *see also Beck*, 903 P.2d at 319.

Accelerated argues there was no mutual mistake because "the Aircraft's engines have *confirmed*, *documented* FOD damage that (1) reduces the value of the Aircraft, and (2) must eventually be resolved/repaired." Aplt. Opening Br. at 25. "Critically, just because there is some uncertainty involved regarding the ultimate scope and cost of repairs does not mean there was any mistake; rather, the Second Addendum correctly expresses the parties' real contract." *Id.* at 26.

Oklahoma defines a mistake of fact as

a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

1.  An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

2.  Belief in the presence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed.

10

Okla. Stat. tit. 15, § 63.  Other Oklahoma statutes also establish relevant principles of contractual interpretation.  *See id.* § 163 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."); *id.* § 164 ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract").

The district court did not err in holding LMI was entitled to summary judgment.  When viewed in the light most favorable to Accelerated, the record indicates that at the time of executing the Second Addendum, both Accelerated and LMI (not to mention AIG) believed that the FOD affected the engines' airworthiness and that they would need to be repaired soon, not at some uncertain point in the future.[2]  *See, e.g.*, Aplt. App. Vol. II at 282 (November 9, 2021, e-mail from Accelerated's broker to AIG stating that Rolls Royce "is *currently* estimating a 70 day turn time for shop visits" and relying on then-applicable fees (emphasis added)); *id.* at 121 (November 8, 2021, e-mail from AIG adjuster to both parties' counsel stating "engines that require repair from foreign ingestion *in order to stay airworthy* will be covered" (emphasis added)).  That belief was a thing material to

---

[2] When viewed in the light most favorable to LMI, a factfinder could conclude that Accelerated, through the inspection company it retained (West Star), knew before the closing that the FOD did not affect the engines' airworthiness:  on November 5, Rolls-Royce e-mailed West Star that it was evaluating whether it could issue the TVs, and on November 9, Rolls Royce e-mailed West Star that it planned to issue the TVs.  But even if Accelerated did not hold a mistaken belief about an urgent need to repair the engines, the record indicates that LMI did.  In Oklahoma, a unilateral mistake of fact also prevents a contract from being formed.  *See Watkins v. Grady Cnty. Soil & Water Conservation Dist.*, 438 P.2d 491, 494-95 (Okla. 1968).

the Second Addendum.  As it turned out, however, there was no immediate need to repair the engines.  After the closing, Rolls-Royce issued the TVs and certified that the FOD did not affect the operation of the engines.  And Accelerated did not seek to repair the permanent engines or install temporary engines.  As such, the record shows the parties (and AIG) were mistaken that benefits were payable under Coverage R.

Accelerated argues that LMI bore the risk of mistake because the parties agreed to allocate the risk to LMI.[3]  We do not find this contention persuasive.  On this record, even viewing the evidence in the light most favorable to Accelerated, it is impossible to conclude that LMI agreed to accept the risk of making an unfounded insurance claim.  To be sure, the record contains a November 9 e-mail from Accelerated's broker stating that he had spoken to AIG's adjuster and "confirmed . . . that they don't care and they will make the statement to us tomorrow how the monies get spent or what is done with it, it does not have to go to rentals specifically, we can do with it as we please with no concern of insurance fraud."  Aplt. App. Vol. II at 281.  There is no evidence, however, that on the closing date AIG ever made "the statement" that would absolve the parties of responsibility for satisfying the

---

[3] Accelerated makes several other arguments in this portion of its opening brief.  In response to LMI's assertion that Accelerated waived arguments by failing to raise them below, Accelerated adequately identifies where it argued that the parties agreed to allocate the risk to LMI.  It does not show that it made the other legal arguments it now presents, and our review indicates it did not.  Nor does Accelerated argue for plain error.  We therefore consider only the assertion that the parties agreed to allocate the risk to LMI.  *See Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1306 (10th Cir. 2017) (holding that an appellant waives an argument if it fails to raise it in the district court and fails to argue for plain error on appeal).

conditions of Coverage R to receive payment. And although Accelerated points out that the adjuster's affidavit submitted in this litigation does not dispute the broker's November 9 e-mail, neither does it confirm it. Rather, the affidavit states, "AIG would not have paid the Temporary Engines Claim if AIG had been made aware at the time (a) that the FOD damage to the Aircraft's permanent engines did not require removal and repair; and (b) that the installation of temporary engines on the Aircraft was therefore unnecessary." *Id.* at 111.

"Recission, not reformation, is the proper remedy when an apparent contract is made because of mutual mistake of fact even when the contract has been executed." *Beck*, 903 P.2d at 319; *see also Hampton*, 817 P.2d at 1274-75 ("When a contract is executed under a mutual mistake of fact, a court can rescind the contract and restore the parties to the same positions as when the contract was executed."). In this case, because the agreement was an addendum to the original contract, that means rescinding the Second Addendum and leaving the parties with the Agreement and the First Addendum. *See Hampton*, 817 P.2d at 1275 (rescinding addendum and leaving the parties with the original contract).

For these reasons, we affirm the district court's grant of LMI's motion for summary judgment and denial of Accelerated's motion for summary judgment on the contract claim.

## III.   Equitable Claims

As alternatives to its contract claim, Accelerated also brought claims for promissory estoppel, money had and received, and unjust enrichment. The district

13

court applied Oklahoma law to those claims, and the parties do not object to that decision.

### A.      Promissory Estoppel

In Oklahoma, there are four elements of promissory estoppel:  "(1) a clear and unambiguous promise, (2) foreseeability by the promisor that the promisee would rely upon it, (3) reasonable reliance upon the promise to the promisee's detriment and (4) hardship or unfairness can be avoided only by the promise's enforcement." *Russell v. Bd. of Cnty. Comm'rs, Carter Cnty.*, 952 P.2d 492, 503 (Okla. 1997).  The district court held that "[e]ven if the other elements of a promissory estoppel claim were assumed to be present, it is undisputed that Accelerated did not incur the expense of temporary engines/rentals and that it otherwise received the benefit of its bargain."  Aplt. App. Vol. III at 108.

Accelerated argues that, regardless of whether it has incurred expenses for temporary engines, it did not otherwise receive the benefit of its bargain. Specifically, it claims it "lost the right/benefit of the complete Pre-purchase Inspection (which could reveal additional Aircraft damage) and the corresponding right/benefit to terminate the purchase (or renegotiate a lower purchase price)." Aplt. Opening Br. at 35 (footnotes omitted).  But Accelerated waived the complete pre-purchase inspection as part of the First Addendum, not the Second Addendum. And Accelerated does not explain how, having executed the Agreement and the First Addendum, it could have terminated the purchase or even negotiated a lower purchase price without being in breach of contract.  Accordingly, Accelerated has

14

failed to establish the district court erred in determining it did not show the detrimental reliance element of its promissory estoppel claim.

### B.    Money Had and Received

"An action for money had and received arises when one has received money which in equity and good conscience should be paid to another." *Nicholson v. Stitt*, 508 P.3d 442, 447 (Okla. 2022). The district court held that "it would no doubt be inequitable for LMI to retain the $500,000. But the inequity arises relative to the competing interests of AIG, not those of Accelerated." Aplt. App. Vol. III at 108.

Accelerated argues that "there is no inequity vis-à-vis AIG because AIG received **exactly** what it was looking for in exchange for its knowing, voluntary payment of LMI's insurance claim under Coverage R: a full release from its insured, LMI," and that "had AIG believed its payment of the insurance proceeds to LMI to be inequitable and that the money should be returned to AIG, then AIG certainly would have joined this suit to assert its right to the return of its money." Aplt. Opening Br. at 40. These assertions, however, rest on speculation rather than evidence.

In Oklahoma, a claim for money had and received belongs to the owner of the money that the other party should not be allowed to retain. *See Nicholson*, 508 P.3d at 447 ("'It is a well-settled principle of law that, if a party through mistake receives money to which he is not justly and legally entitled, and which he should not in good conscience retain, that the law regards him as a receiver and holder of the money *for the use of the lawful owner*, and raises an implied promise on his part to pay the

same, and, on his failure to do so, *the owner* may maintain an action against him therefor.'" (quoting *Avery v. Abraham*, 243 P. 728, 728-29 (Okla. 1926) (emphasis added)).  The evidence shows that the requirements for payment under Coverage R were not met, and "AIG would not have paid the Temporary Engines Claim if AIG had been made aware at the time (a) that the FOD damage to the Aircraft's permanent engines did not require removal and repair; and (b) that the installation of temporary engines on the Aircraft was therefore unnecessary," Aplt. App. Vol. II at 111.  Accelerated thus has failed to show it is entitled to the payment, and the district court did not err in holding that any inequity in LMI retaining the payment would arise relative to AIG, not Accelerated.

### C.    Unjust Enrichment

"Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable, *i.e.*, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain."  *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010).  "Oklahoma defines unjust enrichment as "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another."  *Orthman v. Premiere Pediatrics, PLLC*, __ P.3d __, 2024 WL 411480, at *8 (Okla. Civ. App. Jan. 5, 2024).  The district court did not discuss the unjust enrichment claim.[4]

---

[4] Accelerated asserts that the district court's failure to discuss the claim "should end the appellate inquiry and mandate the reversal of the dismissal of this claim for this reason alone."  Aplt. Opening Br. at 37.  We generally do not consider a claim in the first instance.  *See Evers v. Regents of Univ. of Colo.*, 509 F.3d 1304,

Accelerated argues that it is entitled to the insurance proceeds because "it waived its right to the complete Pre-purchase Inspection (and corresponding right to terminate the purchase) and paid the Purchase Price in reliance on LMI's promise to transfer the $500,000 Insurance Payout upon its receipt." Aplt. Opening Br. at 37. Again, however, Accelerated waived its right to a complete pre-purchase inspection in the First Addendum, not the Second Addendum, and it has not shown how it could have refused to close the purchase without being in breach of contract. But in any event, the same principles apply here as discussed with regard to the claim for money had and received. Because the record shows the requirements of Coverage R were not met, if the insurance proceeds are being held by LMI at another's expense, that other would be AIG rather than Accelerated. We therefore decline to reverse the grant of summary judgment in favor of LMI.

## No. 23-6086

Appeal No. 23-6086 concerns the district court's fee award to LMI.

---

1310 (10th Cir. 2007) (stating that "the better practice" is "leaving the matter to the district court in the first instance"). But our review is de novo, and "[w]e have discretion to affirm on any ground adequately supported by the record." *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004). Here, we exercise our discretion to consider the unjust enrichment claim. The parties fully briefed the claim and had the opportunity to develop the factual record, and the resolution involves a matter of law. *See id.* And because the reason the district court gave for rejecting Accelerated's claim for money had and received also applies to the unjust enrichment claim, there would be little point in remanding for further proceedings.

## I.    Standards of Review

The district court awarded fees under both Okla. Stat. tit. 12, § 936(A) and the Agreement.  Accelerated argues that neither § 936(A) nor the Agreement authorizes an award of attorney fees in this case.  Because the appeal concerns only legal questions, our review is de novo.  *See Baker Hughes Servs. Int'l, LLC v. Joshi Techs. Int'l, Inc.*, 73 F.4th 1139, 1144 (10th Cir. 2023) ("[W]e review the district court's grant of contractual attorney's fees for an abuse of discretion as to any factual determinations but de novo for the legal conclusions on which the district court based the award."); *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1233 (10th Cir. 2018) ("Although the overarching standard of review is for an abuse of discretion, we review the statutory interpretation or legal analysis that formed the basis of the award de novo." (brackets and internal quotation marks omitted)).

## II.    Discussion

As in the merits appeal, we apply Oklahoma law regarding awards of attorney fees.  *See Sundance Energy Okla., LLC v. Dan D. Drilling Corp.*, 836 F.3d 1271, 1280 (10th Cir. 2016) ("In diversity cases, attorney's fees are a substantive matter controlled by state law . . . ." (brackets and internal quotation marks omitted)).

"Oklahoma follows the American Rule as to the recovery of attorney fees. Generally, each litigant pays for their own legal representation, and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery."  *Patel v. Tulsa Pain Consultants, Inc.*, 511 P.3d 1059, 1061 (Okla. 2022).  The district court identified both a statutory and a

contractual basis for awarding fees. Okla. Stat. tit. 12, § 936(A) provides that "[i]n any civil action to recover . . . on a[] . . . contract relating to the purchase or sale of goods, . . . unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs." And the Agreement provides that "[i]n the event that a dispute arises out of or [is] in any way related to this Agreement, then the prevailing party shall be entitled to recover reasonable attorneys' fees and costs from the non-prevailing party." Aplt. App. Vol. II at 45, ¶ 26.

Accelerated's arguments with regard to both grounds for the fee award are based on the contention that the parties' dispute focused solely on the Second Addendum, rather than the Agreement.[5] *See* Aplt. Opening Br. at 46 (arguing, with regard to § 936(A), that "neither Accelerated nor LMI sought to enforce the terms of the Agreement. Instead, Accelerated initiated this action to enforce the terms of the Second Addendum. The Second Addendum did not relate to the sale of the Aircraft . . . ."); *id.* at 47 (arguing, with regard to contractual fees, "[b]ecause this litigation did not involve 'this Agreement' an award of fees under ¶26 of the Agreement was improper").

---

[5] Accelerated also argues that under Oklahoma law, a party who rescinds a contract may not invoke a fee provision in the rescinded contract. LMI asserts that Accelerated did not make this argument before the district court. Accelerated does not show where it preserved the argument, and our review indicates it did not. Nor does Accelerated argue for plain error. We thus do not consider this issue. *See Jacks*, 856 F.3d at 1306.

These arguments are meritless because the Second Addendum was not a separate agreement, but instead was plainly an addendum "to that certain Aircraft Purchase and Sale Agreement dated October 14, 2021," Aplt. App. Vol. II at 78. Under Oklahoma law, "[w]here several written instruments, though not executed at the same time, refer to the same subject-matter and on their face show that some were executed to carry out the intent of the others, all should be construed as one contract." *Davis v. Hastings*, 261 P.2d 193, 195 (Okla. 1953) (internal quotation marks omitted); *see also Strickland v. Am. Bakery & Confectionary Workers Union & Indus. Nat'l Welfare Fund*, 527 P.2d 10, 13 (Okla. 1974) (stating this rule is "well established"). Okla. Stat. tit. 15, § 158 codifies this rule: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

This litigation was a "civil action to recover" on the Agreement, as (albeit ineffectively) amended by the Second Addendum, and the Agreement was undoubtedly "a[] . . . contract relating to the purchase or sale of goods," as required by § 936(A). Likewise, the Agreement makes available reasonable attorney fees and costs to a prevailing party in "a dispute [that] arises out of or [is] any way related to this Agreement." Aplt. App. Vol. II at 45. This litigation arose out of or was related to the Agreement, as (albeit ineffectively) amended by the Second Addendum.

For these reasons, the district court did not err in awarding LMI its reasonable attorney fees. On appeal, Accelerated does not challenge the amounts awarded.

## CONCLUSION

We affirm the judgments in both No. 23-6062 and No. 23-6086.


Entered for the Court


Gregory A. Phillips
Circuit Judge